Jason E. Skala – Alaska State Bar #0105031
LAW OFFICE OF JASON SKALA, LLC
1015 West 7th Avenue
Anchorage, Alaska 99501
Phone: (907) 569-6633
Fax: (907) 569-6001
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JENNIFER A. MCGRATH,<br><br>        Plaintiff,<br><br>v.<br><br>SMITHS MEDICAL ASD, INC.,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

## COMPLAINT

Plaintiff Jennifer A. McGrath ("Ms. McGrath"), by and through counsel, complain of Smiths Medical ASD, Inc. ("Smiths Medical" or "Defendant"), demand a jury trial, and allege as follows:

## JURISDICTION

1.    This Court has subject-matter jurisdiction over this action pursuant to the provisions of 28 U.S.C. § 1332.

2.    The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332 and there is diversity-of-citizenship.

3. This Court has personal jurisdiction over Defendant in that at all relevant times, Defendant (a) transacted business in the state of Alaska; (b) contracted to supply services or goods in the state of Alaska, specifically the Defendant's pain pump; or (c) caused injury within the state of Alaska.

## PARTIES

4. Plaintiff is, and at all times relevant to this complaint, a resident of the State of Alaska.

5. Defendant Smiths Medical ASD, Inc., is a Delaware corporation with its principal place of business in St. Paul, Minnesota.

## FACTS COMMON TO THE CLAIMS

6. At all relevant times described herein, Defendant designed, manufactured, assembled, packaged, promoted, marketed, distributed and/or sold a product called a CADD pain pump, a medical device that delivers a continuous and rate-controlled amount of pain medication, via catheter, directly to a surgical site, including the joint space, for post-surgical pain management.

7. The pain pump is designed and intended to be used with commonly used anesthetics such as lidocaine, marcaine, or sensorcaine with or without epinephrine, over the course of two days or more.

8. The continuous injection of such medications over time directly into or near the shoulder joint can cause serious and permanent damage to the cartilage of the shoulder joint and surrounding tissues, such as chondrolysis, a complete or nearly complete loss of cartilage in the shoulder joint.

9. Upon information and belief, at all pertinent times described herein, Defendant represented to the public and to health-care professionals that the pain pump was a safe and effective product used to alleviate pain.

10. Upon information and belief, at all pertinent times described herein, Defendant represented to the public and health care professionals that pain pumps could appropriately be used in or near the shoulder joint.

11. Upon information and belief, at all pertinent times described herein, Defendant knew that its pain pump was not cleared by the United States Food and Drug Administration ("FDA") for use in the joint space.

12. At all pertinent times, Defendant knew or should have known that its pain pumps, when used with anesthetic medications in the joint space, could be toxic to shoulder joint cartilage. Defendant failed to conduct meaningful studies to determine the toxicity of its pain pumps to human cartilage when used with anesthetic medications in the joint space.

13. Upon information and belief, defendant actively promoted its pain pumps to orthopedic surgeons for orthopedic use and/or use in the joint space.

14. Defendant did not warn Ms. McGrath or her medical providers that its pain pumps had been denied clearance by the FDA for orthopedic use and/or use in the joint space and that pain pumps' safety for such indications had not been established.

15. Defendant did not warn Ms. McGrath or her medical providers about the unreasonable risks and dangers of using the pain pump and anesthetic medications in this manner.

16. Ms. McGrath's medical providers used the pain pump in the manner instructed and directed by Defendant.

17. On or about September 23, 1999, Ms. McGrath underwent arthroscopic surgery on her left shoulder in Anchorage, Alaska.

18. At the conclusion of the surgery, the catheter of a CADD pain pump was inserted into Ms. McGrath's left shoulder.

19. Defendant made the pain pump available to Ms. McGrath and her medical providers for use in Ms. McGrath's left shoulder following surgery. Additionally, upon information and belief, Defendant represented to Ms. McGrath's medical providers that the pain pumps could be used in the way in which it was applied to Ms. McGrath.

20. Following surgery, Ms. McGrath began suffering, and continues to suffer, severe cartilage loss in her left shoulder.

21. Ms. McGrath diligently investigated the possible causes of the continued pain and deterioration in her left shoulder by, among other things, repeatedly consulting with health care professionals. It was not until Ms. McGrath saw an internet advertisement regarding injuries caused by pain pumps that she had notice of facts sufficient to prompt a reasonable person to inquire as to whether her shoulder injury was caused by the pain pump.

22. Ms. McGrath then exercised reasonable diligence to discover whether her injuries were related to the pain pump and to discover the identity of the pain pump manufacturer that caused her injuries.

23. The pain pump used after Ms. McGrath's surgery has caused the degeneration of the cartilage in her left shoulder.

24. The administration of anesthetic solution by the pain pump directly led to cartilage and tissue damage in Ms. McGrath's left shoulder, resulting in severe pain, weakness,

and decreased range of motion in his left shoulder, and requiring further medical treatment, including subsequent surgeries.

25. Ms. McGrath's injuries have resulted in permanent disability in her left shoulder and limited daily activity.

26. As a direct result of the use of the pain pumps in Ms. McGrath's left shoulder, she has suffered harms and losses, including, but not limited to, severe physical pain, mental suffering, inconvenience, loss of the enjoyment of life, past and future medical, surgical, and related expenses, past loss of wages, loss of earning capacity, loss of household services, and care gratuitously rendered.

**FIRST CAUSE OF ACTION**
**(Strict Products Liability)**

27. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

28. On information and belief, Defendant designed, tested, manufactured, assembled, labeled, marketed, distributed, and sold pain pump(s).

29. The pain pump was defectively designed in that, among other things, the continuous infusion of post-surgical anesthetic solution at the delivery rates achieved by the pain pump can cause permanent shoulder injury, such as severe chondrolysis and total destruction of cartilage and surrounding tissue.

30. Additionally, the pain pump was advertised and marketed for use as a post-surgery mechanism to deliver anesthetic solution to the shoulder.

31. As a result of this design defect, Defendant's pain pump is unreasonably dangerous.

32. As a result of its design, when used in a manner reasonably foreseeable to Defendant, the pain pump failed to perform as safely as an ordinary and reasonable user would expect.

33. Defendant's pain pump was more dangerous than an ordinary and reasonable user of the pain pump would expect considering the pain pump's characteristics, uses that were foreseeable to Defendant, and any instructions or warnings given by Defendant.

34. Plaintiff did not have actual knowledge, training, or experience sufficient to know the danger posed by use of Defendant's pain pump in or near the shoulder joint.

35. On information and belief, Ms. McGrath's medical providers did not have actual knowledge sufficient to know the danger posed by use of Defendant's pain pump in or near the shoulder joint, and Defendant did not give Plaintiff or her medical providers sufficient warning regarding the danger posed by use of Defendant's pain pump in or near the shoulder joint.

36. The design defect in Defendant's pain pump was present at the time Defendant manufactured, distributed, and sold the pain pump.

37. The pain pump was expected to and did reach the ultimate user without substantial change in the condition in which it was sold and distributed.

38. Defendant knew, or reasonably should have known, of the danger posed by use of its pain pump in or near the shoulder joint.

39. Defendant was required to warn about the danger posed by the foreseeable use of its pain pump in or near the shoulder joint.

40. Defendant failed to provide an adequate warning to Plaintiff or Plaintiff's medical providers at the time Defendant's pain pump was manufactured, distributed, and sold in that, in

light of the ordinary knowledge common to members of the community who use Defendant's pain pump, Defendant failed to:

      a.    make a warning that was designed to reasonably catch the attention of Plaintiff and her medical providers;

      b.    make a warning that was understandable to Plaintiff and her medical providers;

      c.    make a warning that fairly indicated the danger from the pain pump's foreseeable use in or near the shoulder joint;

      d.    make a warning that was sufficiently conspicuous to match the magnitude of the danger posed by use of the pain pump in or near the shoulder joint;

      e.    make a warning that disclosed that the effectiveness of the device was uncertain for use in the shoulder joint space;

      f.    make a warning that disclosed that the FDA had considered pain pump manufacturers' requests to put this indication in the pain pump label and then had rejected this precise indication for the use of pain pumps to deliver the pain medicine directly into the joint space; and

      g.    make a warning that when used as designed, the pain pump delivered, over time, dangerously high doses of medication directly into the shoulder joint.

41.    The pain pump device was unreasonably and dangerously defective because, at no time did Defendant conduct adequate testing to determine whether pain pumps placed for infusion in the joint space, could cause damage to articular cartilage.

42.    Defendant's failure to make an adequate warning made Defendant's pain pump defective and unreasonably dangerous.

43. The defects in the Pain Pump were a proximate cause of Plaintiff's harms and losses.

## SECOND CAUSE OF ACTION
### (Negligence)

44. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

45. Defendant had a duty to design, manufacture, test, inspect, assemble, label, market, distribute, and sell its pain pump so as to eliminate any unreasonable risk of foreseeable injury.

46. At all relevant times, Defendant breached this duty and failed to use reasonable care in designing, manufacturing, testing, inspecting, assembling, labeling, marketing, distributing, and selling its pain pump. Defendant's negligence includes, but is not limited to, the following:

    a. Defendant failed to conduct a proper assessment and analysis of the design and assembly of the pain pump and its individual parts;

    b. Defendant failed to properly test and/or inspect the pain pump in the environment in which it was to be used to ensure that the pain pump would be safely used in a manner and for a purpose for which it was made;

    c. Defendant failed to recall the pain pump and failed to provide adequate post-marketing warnings and instructions to physicians and medical providers using the pain pump;

    d. use of the pain pump in the joint space had not been cleared by the FDA, and in fact had been specifically rejected by the FDA;

e.  continuous injection of medications, through a catheter, directly into the shoulder joint, for two or more days had not been adequately tested for safety or effectiveness; and

f.  the risk of chondrolysis and other serious post-operative problems associated with using the pain pumps as designed and instructed outweighed the possible benefits of such use.

47. Defendant's failure to use reasonable care made its pain pump unreasonably dangerous.

48. Defendant was required to warn about the danger posed by the foreseeable use of its pain pump in or near the shoulder joint.

49. Defendant failed to exercise reasonable care to provide an adequate warning to Plaintiff or her medical providers regarding use of the pain pump in or near the shoulder.

50. Defendant's negligence was a proximate cause of Plaintiff's harms and losses.

## DAMAGES

1. Plaintiff incorporates by reference the preceding allegations as if fully set forth herein.

2. As a direct and proximate result of Defendant's fault set forth generally above, Plaintiff has suffered and will suffer the following damages, in amounts to be proven at trial:

a.  general damages for severe physical pain, mental suffering, inconvenience, and loss of the enjoyment of life;

b.  past, present, and future damages for the costs of medical, surgical, and rehabilitative treatment and care; and

c.  damages for Plaintiff's past lost wages and loss of earning capacity.

## DEMAND FOR JURY

Plaintiff requests a trial by jury of all issues so triable.

DATED this 29th day of January, 2010.

                                            LAW OFFICE OF JASON SKALA, LLC

                                        By: /s/ Jason E. Skala
                                                Jason E. Skala - Alaska State Bar #0105031
                                                1015 West 7th Avenue
                                                Anchorage, Alaska 99501
                                                Phone: (907) 569-6633
                                                Fax: (907) 569-6001

                                                *Attorneys for Plaintiff*

*Co-Counsel:*

*Pro hac vice applications forthcoming:*
Charles H. Thronson, Utah State Bar #3260
cthronson@parsonsbehle.com
James T. Blanch, Utah State Bar #6494
jblanch@parsonsbehle.com
David R. Hall, Utah State Bar #9225
dhall@parsonsbehle.com
Richard E. Mrazik, Utah State Bar #10623
rmrazik@parsonsbehle.com
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: (801) 532-1234
Facsimile: (801) 536-6611